UNITED STATES OF AMERICA,

        Plaintiff,

                                            Case No. 21-cr-248-pp

    v.

DANIEL ROGERS,

        Defendant.

**ORDER CONSTRUING LETTER AS A REQUEST TO CLARIFY SENTENCE AND GRANTING THAT REQUEST (DKT. NO. 51)**

On December 8, 2025, the court received from the defendant an unsigned letter regarding the sentence the court imposed on November 5, 2024. Dkt. No. 51. The defendant first reminded the court of his identity. Id. at 1. He then explained that although he'd originally planned to contact the court after his release (to report how things were going), he had decided to write sooner because he was scheduled to be released from custody in about two weeks (on December 16, 2025), and there "seem[ed] to be a lot of confusion on [his] sentence/time credited/release." Id. The defendant reported that he'd just spoken with his state probation officer, who told him that "everything is confusing but it seems that [his] Federal time isn't up until July 2026." Id. The defendant felt that that "couldn't be true" and that "something [was] wrong" because of what the court (Judge Pepper) told him and his family in court at the sentencing hearing. Id. The defendant said, "You [Judge Pepper] said that

1

you will credit the first 3 yrs that I had already been incarcerated to my sentence, and whatever I have left (which at the time was 13 months) to my sentence as well." Id. The defendant said that the court had sentenced him to five years in custody followed by three years of supervision. Id. The defendant calculated that with the five-year federal sentence running concurrently with the state revocation sentence, he calculated that "85% of 5 yrs is 4 yrs & 3 months" and that he should have about a month "left over." Id. He said, however, that his state probation officer told him that "in the system it says July." Id. at 1-2. The defendant explained that it had been hard for him to get in touch with his attorney, so he wanted to write the court to ask whether he and his family heard the court incorrectly, or whether perhaps the federal system would not be corrected until he was moved to federal custody. Id. at 2. He asked the court to write back to him or provide him with some kind of paperwork. Id.

The court construes this letter as the defendant's request that the court clarify his sentence. The court will grant that request.

On July 10, 2024, the defendant pled guilty to one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(a)(2) (Count One) and one count of possession with intent to distribute a controlled substance (fentanyl) in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. §841(b)(1)(B) (Count Two). Dkt. Nos. 34 (plea agreement), 37 (minutes from change-of-plea hearing). Count Two carried a five-year mandatory minimum sentence. Dkt. No. 34 at ¶6; Dkt. No. 37 at 1.

In preparation for the defendant's sentencing hearing, the U.S. Probation Officer prepared a presentence investigation report; among other things, that report reflected that on March 22, 2022, in <u>State of Wisconsin v. Daniel Lee Rogers</u>, Milwaukee County Case Number 2016CF002359, the state court had revoked the defendant's extended supervision based on the conduct that gave rise to the federal charges. Dkt. No. 41 at ¶38. Although the report did not reflect the length of the revocation sentence the state court imposed (because at the time the federal PSR was prepared, the probation officer had not received those records from the Wisconsin Department of Correction), it did reflect that the defendant was scheduled to be released from state prison on December 22, 2025. <u>Id.</u>

The report also reflected that the defendant had been in state custody since October 28, 2021—three years and eight days before his federal sentencing hearing. <u>Id.</u> at pg 1. October 28, 2021 was the day that local law enforcement and members of the U.S. Marshals Service executed a search warrant and found the defendant, his girlfriend, three children, a gun and 80 grams of fentanyl, as well as scales, packaging, cutting agents, ammunition and a diamond-encrusted watch. <u>Id.</u> at ¶10. So the defendant had been in state custody, in good measure because of the events that gave rise to his federal prosecution, since the day of his arrest for those events.

As mentioned, the court sentenced the defendant on November 5, 2024. Dkt. Nos. 47 (minutes) and 48 (judgment). The judgment reflects the sentence imposed by the court:

> [T]wenty-four (24) months on Count One, adjusted from sixty (60) months to account for the defendant's confinement from October 28, 2021 until November 5, 2024, in relation to Milwaukee County Circuit Court Case No. 2016CF0002359, that would not otherwise be credited by the Bureau of Prisons, to run concurrently with the balance of the revocation sentence imposed in Milwaukee County Circuit Court Case No. 2016CF0002359; and twenty-four (24) months on Count Two, adjusted from sixty (60) months to account for the defendant's confinement from October 28, 2021 until November 5, 2024, in relation to Milwaukee County Circuit Court Case No. 2016CF0002359, that would not otherwise be credited by the Bureau of Prisons, to run concurrently with the balance of the revocation sentence imposed in Milwaukee County Circuit Court Case No. 2016CF0002359 and to run concurrently with the sentence imposed on Count One.

Dkt. No. 48.

Put more plainly, the court imposed a federal sentence of sixty months—five years—but it reduced that sentence by the three years the defendant had spent in state custody based on the revocation of his extended supervision in Case No. 2016CF02359. That left him with a remaining federal sentence of twenty-four months—two years. And the court imposed that twenty-four-month sentence to run concurrently with (at the same time as) the "balance"—the remaining portion as of November 5, 2024—of the sentence the state court had imposed in Milwaukee Count Case No. 2016CF02359. So, as of his November 5, 2024 federal sentencing hearing, the defendant had thirteen months and seventeen days left to serve on his revocation sentence. Because this federal court had imposed the twenty-four-month *federal* sentence to run *concurrently* with the state revocation sentence, the defendant was able to start serving the twenty-four-month federal sentence right away, even though he still had thirteen months and two weeks left to serve on his state sentence. It has

been just over seventeen months since the November 2024 federal sentencing hearing, which means that the defendant has roughly seven months remaining on his federal sentence, absent any good-time credit or other federal credits.

It appears that the point of the defendant's letter relates to that last issue—good time or other federal sentence credit. The defendant said in his letter that "when me and my family Did [sic] the math 85% of 5 yrs is 4 yrs & 3 months;" by *his* calculations, that means that his federal release date should have been about a month after he completed his state revocation sentence.

The defendant did not explain why he and his family multiplied 85% by five years. The court assumes that he was referring to 18 U.S.C. §3624(b)(1), which allows a person serving a federal sentence of one year or more to earn up to fifty-four days "for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." This is sometimes known as the "good time credit" statute. Fifty-four days equals about 15% of the 365 days in a year; it appears that the defendant and his family assumed that he would receive that full, 15% off of each year of a five-year sentence.

There are a few problems with this assumption. First, although the court imposed a sentence of sixty months, it adjusted that sentence downward— *reduced* it—by three years to credit the defendant for the state revocation sentence. So he got only twenty-four months of actual federal incarceration against which the Bureau of Prisons could calculate "good time" credits. He

5

could not earn "good time" credits on time he did not spend in federal custody. Second, there is no guarantee that a federally incarcerated person will get all fifty-four days of good time credit for every year; the credits are called "good time" credits because the Bureau of Prisons awards them only if the defendant earns them. Many people lose some of those days when they incur disciplinary "strikes."

But the biggest problem with the defendant's assumption is that this court did not have, at the time of sentencing, and does not have now the authority to calculate or award good time credit. The decision whether to award good time credits is solely within the authority of, and "subject to determination by[,] the Bureau of Prisons." 18 U.S.C. §3624(b)(1). The Seventh Circuit Court of Appeals has explained, more than once, that calculation of federal sentence credit is an administrative matter delegated by law to the Attorney General, who acts through the BOP. See United States v. Walker, 917 F.3d 989, 993 (7th Cir. 2019) (citing United States v. Wilson, 503 U.S. 329, 335 (1992)); see also United States v. Jones, 34 F.3d 495, 499 (7th Cir. 1994) ("only the Attorney General of the United States, through the Bureau of Prisons, has authority to determine when to give a defendant credit against a sentence for time he has served.").

The Bureau of Prisons web site reflects that the defendant is in custody at FCI Terre Haute, with a projected release date of July 19, 2026. That's just over twenty months from the date of his sentencing hearing—in the neighborhood of 85% of his twenty-four-month federal sentence. If the

defendant believes that the BOP incorrectly calculated his good time credit, he must discuss that with his BOP case worker or the warden of his institution.

Finally, on February 13, 2026, the court received from the defendant a request for his docket sheet, plea agreement, sentencing transcript and judgment. Dkt. No. 52. The clerk's office forwarded his request for his sentencing transcript to a court reporter; the court makes audio recordings of sentencing hearings, and if someone wants a transcript of that audio recording, the person must order a transcript from a court reporter and pay for it. As for the other documents, on March 30, the court received another letter from the defendant, saying that he'd received a letter from the clerk's office advising him that he needed to pay $0.10 per page ($2.90) for the copies, but explaining that he was unemployed and did not have the funds to cover that amount. Dkt. No. 53. He repeated his request for the documents. Id.

The court understands that the defendant might not have money at the moment. But as best the court can tell from reviewing the docket, the court did not make an "indigency" determination regarding the defendant—it did not review his financial situation and determine that he did not have the capacity to hire a lawyer. He has not filed an appeal or other challenge to his conviction. He is not entitled to free copies of the documents he seeks. Once the defendant has the $2.90, he may send it to the clerk's office and get copies of his docket sheet, plea agreement and judgment. He will be able to obtain a transcript of his sentencing hearing only if he pays whatever amount the court

7

reporter advises him it will cost to prepare it.

The court **GRANTS** the defendant's letter request to clarify his sentence. Dkt. No. 51.

Dated in Milwaukee, Wisconsin this 13th day of April, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

8